A05A0743. CANTERA et al. v. AMERICAN HERITAGE LIFE INSURANCE COMPANY.
(617 SE2d 259)

RUFFIN, Chief Judge.

In this interpleader action filed by American Heritage Life Insurance Company ("American Heritage"), the trial court granted summary judgment to the husband of Maurina Marquez, Jose Guerrero, who was the named beneficiary of life insurance policies on Marquez's life issued by American Heritage. Marquez died on January 17, 2000, as the result of a homicide. Marquez and Guerrero's children appeal from this decision, contending that their father is not entitled to recover the life insurance proceeds because there is a genuine issue of fact as to whether he killed their mother. Because we find that Guerrero failed to demonstrate that he was entitled to

---

recover the insurance proceeds as a matter of law, and there remains a genuine issue of material fact as to whether he killed his wife, we reverse.

In reviewing the grant or denial of a motion for summary judgment, we conduct a de novo review of the evidence.[1] To prevail on summary judgment, the moving party must show that there is no genuine issue of material fact and that the evidence, viewed in a light most favorable to the nonmoving party, warrants judgment as a matter of law.[2]

Viewed in this light, the record shows that American Heritage filed an interpleader action against Guerrero and his children and tendered into the registry of the court $103,040.26 due under three life insurance policies issued on the life of Marquez. American Heritage alleged, and Guerrero admitted, that Marquez died as a result of a homicide. American Heritage further alleged that Guerrero was suspected of killing Marquez, was wanted for her murder, and had made false and misleading statements to American Heritage.

Five months after the interpleader action was filed, Guerrero moved for summary judgment and submitted an affidavit in support of the motion in which he denied killing his wife, taking any part in causing her death, or knowing who caused her death. The guardian ad litem for five of Marquez and Guerrero's minor children opposed the motion with a certified copy of the fugitive warrant for Guerrero's arrest for the murder of Marquez. She also submitted an affidavit from a sheriff's deputy which stated:

I have read the affidavit of Jose Guerrero filed in this case. Based upon my personal knowledge and investigation, it is my testimony that there is substantial evidence that Jose Guerrero murdered his wife while the family was in Mexico. Specifically, his stories with regard to how her death occurred were inconsistent and there is evidence that he owned and was in possession of a weapon which matches the murder weapon. Furthermore, there is evidence that he sold that weapon shortly after his wife's murder to a family member.

The detective further averred that Guerrero had been "turned over to the INS for deportation to Mexico to stand trial for the murder of [the deceased]."

---

[1] See *Tripp v. Allstate Ins. Co.*, 262 Ga. App. 93, 94 (584 SE2d 692) (2003).
[2] See id.

Guerrero moved to strike the deputy's affidavit because it contained only conclusions based on hearsay or matters not within the deputy's personal knowledge. The trial court denied Guerrero's motion for summary judgment without explanation and without ruling on the motion to strike the deputy's affidavit.

Three years later, after no further discovery was conducted by the parties,[3] Guerrero moved for summary judgment again, asserting that he had been found not guilty by Mexican authorities for the murder of his wife. In his second affidavit, Guerrero admitted that he was carrying a firearm while in Mexico at the time of his wife's death, but asserted that ballistic tests admitted during his trial showed that his gun was not the gun that killed his wife. He also asserted that he obtained "a true and correct original copy of the trial transcript which is printed in Spanish and filed with the Court herein," which was then translated by a certified translator.[4] Finally, he averred again that, "[h]e did not kill [his] wife . . . , nor did [he] have any participation or knowledge as to her killing."

The guardian ad litem opposed the summary judgment motion with an affidavit from one of the children which stated:

2. I am the son of Jose Guerrero a/k/a Vincente Cantera Resendiz.

3. My father told me that my mother was killed in a bus accident which happened in Mexico.

4. After my mother[']s death my father told me he would never have to work again and he would buy land.

5. I saw the note that was recovered in the clothing that my mother was wearing when she died. I know that my father has two different types of handwriting. I have seen both types of handwriting and can distinguish both. The person that wrote the note that was found in my mother[']s clothing at her death was written by Jose Guerrero a/k/a Vincente Cantera Resendiz. I am certain of this.

6. I was taken by my father to a wooded location in Echols

---

[3] After the second summary judgment motion was filed, the guardian ad litem requested an extension of discovery and filed a notice to take the deposition of Guerrero. The record does not show any ruling by the trial court on the request to extend discovery.

[4] The record contains only the translated copy of the trial transcript and not the original. In the motion hearing, however, the parties agreed that only the translated copy would be filed for the court's consideration.

County the year of my mother[']s death. He threatened me and made me bury a man he had shot. I believe the man's name is Luis Guerrero. He told me to start digging or I was going in there too. I called the police when I thought I was safe and lead [sic] the officers to the body.

7. I believe my father was directly involved in the murder of my mother.

The transcript from Guerrero's criminal trial in Mexico states that a note was found on Marquez's body; however, there was no testimony from the person who found the note and the Mexican tribunal noted that it was not clear how or when this note was obtained in the investigation.

The guardian ad litem also submitted certified copies of a warrant issued in Echols County for Guerrero's arrest for the murder of Luis Guerrero, as well as a statement made by one of the children during Guerrero's trial in Mexico that:

when they returned all of them were crying and I could not understand why until they said that [Marquez] was dead, then my dad was in a hurry to get rid of the gun and Armando got tired of listening to him and bought it from him. . . . [Guerrero] told everybody that she died in a car accident and he told me not to say what happened. . . . I believe my dad killed my mom, he did it for the money. . . . [Guerrero] always threatened [Marquez] with the guns that he was going to kill her and also [the children], even one day he hit her with a rifle.

The child who made this statement was a party to the interpleader action and signed an acknowledgment of service of the interpleader complaint in Tifton. Guerrero objected to the use of this testimony because the child was a party to the action.

The trial court, without explanation, granted Guerrero's motion for summary judgment and found that he was entitled to the insurance proceeds.[5] The children appeal, contending that Guerrero failed to demonstrate that he was entitled to summary judgment in his favor as a matter of law. We agree.

OCGA § 33-25-13 provides that:

---

[5] The trial court also found that because Guerrero was a fugitive wanted for voluntary manslaughter, he would have to personally appear at the courthouse "to receive the insurance funds due him."

[n]o person who commits murder or voluntary manslaughter or who conspires with another to commit murder shall receive any benefits from any insurance policy on the life of the deceased, even though the person so killing or conspiring be named beneficiary in the insurance policy. A plea of guilty or a judicial finding of guilt not reversed or otherwise set aside as to any of such crimes shall be prima-facie evidence of guilt in determining rights under this Code section. All right, interest, estate, and proceeds in such an insurance policy shall go to the other heirs of the deceased who may be entitled thereto by the laws of descent and distribution of this state, unless secondary beneficiaries be named in the policy, in which event such secondary beneficiaries shall take.

Guerrero asserts that this statute does not apply as a matter of law based on the averments in his affidavits that he did not kill his wife and his children's failure to produce competent evidence to the contrary. We disagree.

First, Guerrero's statements that he did not kill his wife are not competent evidence. "[A] conclusion or allegation of the ultimate fact . . . is not sufficient to support a motion for summary judgment."[6] We have previously held that a party's averment in an affidavit that she did not murder her husband states only a conclusion which cannot be considered on summary judgment.[7] We reasoned the affidavit only stated a conclusion because it did "not recite the events which occurred at the time of [the decedent's] death" from which the trial court could determine if a genuine issue existed on the ultimate question.[8] In the absence of substantiating facts, a party's affidavit is self-serving and conclusory and cannot be used to support a motion for summary judgment.[9]

Second, we consider Guerrero's claim that he was acquitted in Mexico of his wife's murder. Even if this evidence were properly authenticated and before the trial court, it would have no impact on the outcome of this civil case, which has a different burden of proof.[10] With the exclusion of Guerrero's statements and evidence that he was

---

[6] *Sullivan v. Fabe*, 198 Ga. App. 824, 826 (1) (403 SE2d 208) (1991).

[7] See *Fannin v. Fannin*, 133 Ga. App. 681, 682 (1) (212 SE2d 16) (1975) (interpleader action of life insurance proceeds).

[8] Id.

[9] See *Jones v. Bank of America Mtg.*, 254 Ga. App. 217, 219 (1) (561 SE2d 867) (2002); *Hobbs v. Western Surety Co.*, 247 Ga. App. 658, 659 (544 SE2d 729) (2001); *Miller v. Calhoun/Johnson Co.*, 230 Ga. App. 648, 650 (3) (b) (497 SE2d 397) (1998).

[10] See *Neal v. Neal*, 160 Ga. App. 771, 772-773 (287 SE2d 109) (1982).

acquitted of his wife's murder, we must only consider whether there is any competent evidence to create a genuine issue of fact as to whether he committed murder or voluntary manslaughter. The remaining admissible evidence,[11] while not well developed, is sufficient to create a genuine issue of material fact when all inferences are taken in favor of the nonmovant children. It is undisputed that the wife died as a result of murder. Guerrero admits in his affidavit that his wife died from a gunshot wound while in Mexico and that he was carrying a gun while in Mexico.[12] According to Guerrero's son, Guerrero told him after his mother's death that she "was killed in a bus accident" and that "[Guerrero] would never have to work again and he would buy land."

As the evidence before the trial court was sufficient to create a genuine issue of material fact as to whether Guerrero committed murder or voluntary manslaughter, we reverse the trial court's grant of summary judgment to Guerrero.[13]

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JULY 11, 2005 — 

*James G. Tunison, Jr.*, for appellants.
*G. G. Joseph Kunes, Jr.*, for appellee.

---

[11] We are not considering (1) conclusory statements made in the affidavit of Guerrero's son; or (2) the testimony of the daughter in the Mexican trial, because we cannot determine if it was made under oath.

[12] Even if we were to assume that the Mexican trial transcript was properly authenticated, we cannot find any support in the transcript for Guerrero's claim that a ballistics study exonerated him, and his averment about this study is not based on personal knowledge.

[13] See *Neal*, supra.