## 54170. COBB COUNTY FAIR ASSOCIATION, INC. et al. v. BOYLE.

SMITH, Judge.

Cobb County Fair Association, Inc., co-defendant in the trial court, comes to this court from the granting of an interlocutory appeal. The appeal is from an order of the trial court denying Cobb's motion to extend time for filing defensive pleadings and to open default. CPA § 55 (b) (Code Ann. § 81A-155(b)) and CPA § 6 (b) (Code Ann. § 81A-106 (b)). We reverse.

Cobb, and James H. Drew Shows, Inc., were sued by Boyle for personal injuries allegedly caused by employees of Drew Shows. In September, 1976, Cobb was operating a fair in Cobb County, and Drew Shows had a contract to supply all shows, riding devices and concessions for the fair. The contract also stated all of these would "be under the management and control" of Drew Shows. A provision in the contract authorized Drew Shows to deduct from monies owing Cobb the cost to Drew Shows of "Midway Public Liability Insurance covering the auspices, ground-owner [Cobb] and the James H. Drew Shows."

Boyle filed a complaint on September 27, 1976, and Cobb was served September 29, 1976. Not until December, 1976, did Cobb realize that no answer had been filed.

The following transpired between September 29, and December, 1976:

(1) Travelers Insurance Co. (Cobb's insurance carrier) and Joe Day, its claims supervisor, received a report of the complaint on October 6, 1976.

(2) Prior to October 8, 1976, Drew Shows told Cobb that their insurance carrier would defend the claim.

(3) Joe Day contacted Cobb on October 8, 1976, and was told that the insurance carrier for Drew Shows was going to defend the case.

(4) Based upon (2) above, Cobb forwarded the complaint copy served upon it to Morris H. Kaliff & Son,

insurance brokers in San Antonio, Texas. Significantly, Drew Shows sent its service papers there.

(5) Prior to October 26, 1976, Kaliff, through its agent, Gordon Caton, confirmed to Day that it had received both complaints and had forwarded them to K & M Claims Service (independent adjusters) in Atlanta.

(6) On October 26, 1976, Joe Day contacted Frank Pendleton of K & M and was told an extension of time would be obtained to file defensive pleadings. Based upon Day's conversation with Pendleton, it was his understanding that Drew Shows believed Cobb was an additional insured under their policy and, if this was not true, he (Pendleton) would inform Day. Day was never informed otherwise and Cobb, thinking Drew Shows was defending Cobb as an additional insured under their policy, as set out in their contract, did not file an answer and was in default.

(7) Day, believing that K & M Claims Service, through its agent, Pendleton, had acted on behalf of both defendants, did not seek to have Cobb represented by counsel.

(8) Some two to three weeks into December, 1976, Day was informed that K & M had turned the defense of the case over to an attorney who was representing Drew Shows only. At this time he contacted the attorneys for Travelers to file an answer.

(9) Travelers, through its attorneys, on behalf of Cobb filed this motion to open default before the case was called for trial.

Cobb contends that there was a misunderstanding between Day (Travelers) and Pendleton (K & M) as to the responsibilities each defendant was to assume, the result being — Cobb in default.

Therefore, Cobb takes the position that the facts show good faith in handling the matter. Also, that Day was diligent and was authorized to believe that Drew Shows would defend both. In light of these facts Cobb contends its neglect was excusable and justified. Finally Cobb alleges that its failure to file defensive pleadings was not due to *inattention* but was due to a reasonable misunderstanding between Day and Pendleton of K & M. We agree.

In cases such as this, no two are alike and each must stand on its own merits. The facts in each case are different and you must look at each in the light of the facts peculiar to that particular case. Civil Practice Act § 55 (b) (Code Ann. § 81A-155(b)) provides three ways in which a default may be opened. One of them is *excusable neglect,* provided all other aspects of the law are complied with as to opening a default.

In this case, Cobb complied with the statutory provisions for opening a default. The only question is: Are the facts set out herein supportive of the claim of excusable neglect? We think so. It is obvious that Day was diligent in checking on the status of the case and his action or lack thereof was based upon what other people in positions of authority told him was being done in the matter. The law should not blindly impose standards which require individuals, in the conduct of their daily business, to distrust the parties with whom they deal. Likewise, a litigant should not unnecessarily be forced into default as a consequence of having reasonably relied upon the word of his fellow, *particularly* when no innocent party will suffer if the default is opened. The purpose of § 81A-155 (b) being placed in the Code is to furnish relief when, as here, there was an understandable misunderstanding.

Where, as here, the contract between Cobb and Drew Shows required Drew Shows to furnish the liability insurance, certainly Cobb was not negligent in sending their copy of the complaint to Drew Shows' insurance broker. Drew Shows had to give Cobb this information or Cobb would not have known where to send it. This is further strengthened by the fact that Drew Shows sent their complaint to the same place. Day followed up and inquired about the matter of an answer being filed and was told that Cobb was an additional insured under the policy of Drew Shows but if not, he would be so informed. Day did all he could. He was as diligent as you could expect one to be. He did not get to be a claims supervisor for Travelers by allowing cases to go into default. Immediately upon learning that the attorneys for Drew Shows had not filed an answer for Cobb, he obtained an attorney and a motion was filed.

Our position is sustained in *Deering Harvester Co. v. Thompson,* 116 Ga. 418 (1) (42 SE 772), holding that a default should be opened if a "reasonable excuse" for failing to answer is shown. Likewise, in *Ezzard v. Morgan,* 118 Ga. App. 50 (162 SE2d 793) and *Cate v. Harrell,* 128 Ga. App. 219 (196 SE2d 155), this court held that excusable neglect does not mean gross negligence. The facts in this case require the conclusion that no gross negligence was involved and Cobb had a reasonable excuse for failing to answer on time.

We realize that the matter was within the sound discretion of the trial court; however, since the evidence demanded a finding of excusable neglect, the trial court abused its discretion in not opening the default.

*Judgment reversed. Bell, C. J., and McMurray, J., concur.*

ARGUED JUNE 27, 1977 — DECIDED OCTOBER 13, 1977 — REHEARING DENIED NOVEMBER 7, 1977 — 

*Freeman & Hawkins, William Q. Bird, H. Lane Young, II,* for appellants.
*J. Don Jones, Douglas Dennis,* for appellee.