60040. ROSE PRINTING COMPANY v. EOS GROUP, LTD. et al.

Sognier, Judge.

The EOS Group, Ltd. (EOS) filed an action against Rose Printing Company, Inc. (Rose) and others, alleging a conspiracy and the unauthorized publishing of a book. EOS sought damages and injunctive relief. Rose's role in the controversy was as printer of the book, while the other litigants were concerned with a contractual agreement pertaining to publication and the appertaining profits. On October 17, 1978 Rose was served with a copy of the petition. On November 21, 1978 Rose, through its Florida counsel, secured from plaintiffs' (appellee) attorney a 60-day written extension of time to file defensive pleadings.

During the month of December 1978, oral extensions of time were agreed to by counsel. Although not filed, a letter between counsel confirmed a second extension. A third extension appears to have been granted and both parties are in agreement that as late as December 26, 1978 there was no default. On this latter date Rose filed a motion to dismiss based, inter alia, on a failure of the summons to bear the clerk's signature. The litigants then proceeded with certain motions, discovery and hearings. During this period Rose's counsel complained of lack of notice of hearings, participated in some matters and conducted correspondence with the various attorneys. During this period, settlement discussions took place between counsel for Rose and EOS; no mention was made of Rose's default.

Rose's motion to dismiss was denied on February 6, 1979 and on March 13, 1979 Rose filed its answer. No issue regarding default was

raised during this period of time. Rose filed lengthy interrogatories addressed to EOS on October 4, 1979. On October 23, 1979 EOS filed a motion to strike Rose's answer alleging it was not timely filed, and that the default was unopened. At the same time, EOS sought a protective order to quash Rose's interrogatories.

In response to EOS's motion to strike, Rose filed a motion to open the default, pay costs and plead instanter by affirming its earlier answer. A hearing was held on the respective motions, and while counsel did not contradict each other on any of the facts, each interpreted the facts differently. The court denied Rose's motions and held that the matter was in default. Rose applied for interlocutory appeal which was granted, and argues that the trial court erred in not opening the default.

The record discloses that Rose obtained several extensions of time to answer. Until March, 1979 discussions between counsel for Rose and EOS were had regarding resolution of the case with regard to Rose. Counsel for Rose hoped to avoid the necessity of employing local counsel. A stipulation was entered by the trial court at the default hearing that at the hearing on Rose's motion to dismiss (January 31, 1979), no mention was made of default. As late as February 20, 1979, counsel for Rose and EOS corresponded regarding settlement. During this same period discussions were had about Rose allowing certain parties to review Rose's records. On March 27, 1979 an order was signed for Rose to turn over certain records. The first mention of default arose as a response to Rose's voluminous interrogatories filed October 4, 1979.

Code Section 81A-155 (b) provides: "At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of a plea or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and announce ready to proceed with the trial."

It is undisputed that Rose has complied with the statutory requirements for opening default. The only question remaining is whether appellant has shown providential cause, excusable neglect or sufficient facts upon which a judge could determine that a proper case has been made for the opening of default.

We especially note the length of time and the continued activity between the filing of Rose's answer in March, 1979, and the first mention of default in October, 1979. All parties had proceeded with some discovery, motions and hearings, and no mention of default was

made until Rose filed its interrogatories. We conclude that by their conduct the parties tacitly consented to an extension of time to Rose. We can and do view this matter as one where there has been an "understandable misunderstanding" between the parties. *Cobb County Fair Assn. v. Boyle,* 143 Ga. App. 754, 756 (240 SE2d 136) (1977). In *Cobb County Fair Assn.,* this court reversed the lower court when it failed to open a default under similar circumstances. "In this case, Cobb [the defendant] complied with the statutory provisions for opening a default. The only question is: Are the facts set out herein supportive of the claim of excusable neglect? We think so. It is obvious that Day [an insurance agent] was diligent in checking on the status of the case and his action or lack thereof was based upon what other people in positions of authority told him was being done in the matter. The law should not blindly impose standards which require individuals, in the conduct of their daily business, to distrust the parties with whom they deal. Likewise, a litigant should not unnecessarily be forced into default as a consequence of having reasonably relied upon the word of his fellow, *particularly* when no innocent party will suffer if the default is opened. The purpose of § 81A-155 (b) being placed in the Code is to furnish relief when, as here, there was an understandable misunderstanding"

At no time did Rose flaunt process; rather, Rose was diligent and at all times concerned about receiving notice so that it could attend hearings. Further, no prejudice to any party is suffered by opening the default. With multiple defendants the case must, in any event, be tried to determine liability. See *Axelroad v. Preston,* 232 Ga. 836 (209 SE2d 178) (1974).

The trial court opined that it did not have discretion in the matter. However, considerable discretion is vested in the trial court in opening a default. The evidence here authorized an opening of default. Thus, even though the matter was within the sound discretion of the trial court, we find that the court erred in failing to exercise its discretion and open the default. *Cobb County Fair Assn. v. Boyle,* supra.

*Judgment reversed. Deen, C. J., and Birdsong, J., concur.*

ARGUED JUNE 2, 1980 — DECIDED SEPTEMBER 18, 1980.

*Conley Ingram, Robert D. McCallum, Jr.,* for appellant.
*William R. Carlisle, J. Al Cochran, William O. Green, Jr., Eugene S. Zimmer, C. Gary Williams,* for appellees.