A07A0343. PATTERSON v. BRISTOL TIMBER COMPANY et al.

(649 SE2d 795)

ADAMS, Judge.

This appeal arises from a personal injury suit filed by William Patterson against Bristol Timber Company and R. C. Moore, Jr. On appeal, Patterson raises arguments addressing the trial court's orders reopening a default judgment against Bristol and granting summary judgment to Bristol and Moore.

Bristol is a company engaged primarily in the logging and wood chipping industry. Moore is the president and CEO of the wholly-owned corporation. On November 1, 2002, Bristol entered into a contract to supply wood chips to Inland Paperboard and Packaging, Inc., d/b/a Temple-Inland Forest ("Inland"). To effectuate that contract, Bristol entered into a subcontract with Patterson's employer, Brownlow Trucking Company, to load and transport the wood chips to Inland. Bristol maintains a front-end loader at its wood chipping facility to assist in the loading of wood chips onto trucks for delivery. Patterson's complaint asserts that he was injured on Bristol's premises on July 12, 2003 when he fell off a ladder while exiting this loader.

Patterson filed his complaint on November 29, 2004, asserting negligence and premises liability on the part of Bristol and asserting that Moore was individually liable because Bristol was merely his alter ego. Service was achieved on Bristol's registered agent for service of process on December 8, 2004, and Moore was served on January 18, 2005. Moore filed a timely answer to the complaint, but Bristol's answer was filed outside the statutory period. OCGA § 9-11-12 (a). Patterson moved for entry of a default judgment, and Bristol countered with a motion to open default.

In support of that motion, Moore averred that as president of Bristol, he gave the summons and complaint to insurance agent Jay Woodall on or about December 9 or 10, 2004, for Woodall to forward to Bristol's insurance carrier. He relied upon Woodall's repeated assurances that he had forwarded the suit for defense. Bristol did not discover until February 11, well after the time for filing an answer, that no answer had been filed on its behalf because Woodall had sent the suit to the wrong insurance carrier. Following a hearing,[1] the trial court granted Bristol's motion to open default and denied Patterson's motion to reconsider that decision.

On May 9, 2005, Moore moved for summary judgment on Patterson's complaint. Two months later, Bristol also moved for summary judgment. Patterson subsequently amended his complaint to assert

---

[1] The hearing on that motion was not transcribed.

additional claims for negligent bailment against both Bristol and Moore. In response, both defendants amended their motions for summary judgment to address the new bailment claims. Additionally, on February 28, 2006, Bristol filed a second motion for summary judgment, claiming tort immunity pursuant to OCGA §§ 34-9-8 (a) and (d) and 34-9-11 of the workers' compensation laws.

Several days later, on March 3, 2006, the trial court held a hearing on Moore's motion and Bristol's first motion for summary judgment. After hearing argument from the parties, the court granted Moore's motion stating that Patterson had not established his theory of alter ego liability, but it denied Bristol's initial summary judgment motion. Despite the trial court's grant of summary judgment to Moore, Patterson filed a "Voluntary Dismissal Without Prejudice" dismissing Moore from the lawsuit on the morning of March 6. Later that same day, the trial court entered a written order granting Moore's motion for summary judgment stating that Patterson had failed to establish his claim of alter ego. On May 5, 2006, the trial court heard argument on Bristol's second motion for summary judgment on the ground of tort immunity, and on July 17, 2006, the court granted that motion. This appeal followed on August 11, 2006.

1. The notice of appeal provides that Patterson is appealing from the trial court's July 17 order granting Bristol summary judgment, the trial court's earlier orders allowing Bristol to open the default, and "other adverse orders and said orders having been entered in this action on or about March 25, 2005." Patterson's appellate brief, however, addresses not only the motions listed in the notice, but also the trial court's order granting Moore's motion for summary judgment.[2] Moore has moved to dismiss the appeal as to him individually, noting that he was granted summary judgment on March 6, and Patterson has failed to appeal that ruling in a timely manner under OCGA § 5-6-38 (a).

The trial court's March 6 order was directly appealable under OCGA § 9-11-56 (h), but such an appeal was not mandatory. *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243 (248 SE2d 641) (1978). Since the order was not appealed within the 30-day statutory limit, however, it could only be appealed after entry of the final judgment in the case. *Jones v. Walker*, 209 Ga. App. 532, 534 (1) (433 SE2d 726) (1993). We must determine, therefore, whether the July 17 order granting summary judgment to Bristol represented the final judgment in the case.

---

[2] We note, however, that a notice of appeal from a final judgment does not have to list every order that gives rise to an issue on appeal. *Mateen v. Dicus*, 281 Ga. 455, 456 (637 SE2d 377) (2006).

Under OCGA § 5-6-34 (a) (1), a trial court's order constitutes a final judgment "where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court." (Citations, punctuation and footnotes omitted.) *Standridge v. Spillers*, 263 Ga. App. 401, 403 (1) (587 SE2d 862) (2003). At the time the trial court granted Bristol summary judgment, it had previously entered its March 6 order granting Moore summary judgment, and Patterson had filed a voluntary dismissal of Moore that same day. The trial court's order provided that it was granting summary judgment because Patterson had "failed to show in his opposition motion that Moore, the individual, was an alter ego of the Defendant, Bristol Timber Company." Although the trial court announced at the hearing that it was granting summary judgment as to all claims, the written order purports to grant summary judgment only as to claims based upon the alter ego theory. The bailment claim, however, was not based upon a theory of alter ego, but instead was based upon an allegation that Moore owned the loader in his personal capacity. Thus it was unclear at the time of appeal whether all claims had been adjudged in Moore's favor.

Moreover, Moore had filed an objection to Patterson's voluntary dismissal, which was pending before the trial court at the time of the appeal. A hearing on the objection was scheduled for October 6, 2006, and the trial court issued an order on October 9. The order stated that the trial judge's oral pronouncement of summary judgment on March 3 was intended to dispose of all claims against Moore. The trial court thus concluded that Patterson's voluntary dismissal had no force or effect because his counsel was present at this pronouncement. The court found, however, that due to clerical error, the March 6 written order may not have clearly conveyed the court's intent to dismiss all claims against Moore. To address this lack of clarity, the court submitted a "new order" specifically granting summary judgment to Moore on all counts. Thus, the issue of whether any claims remained against Moore was not resolved until after the appeal was filed, when the trial court issued a new order granting the motion for summary judgment as to all claims.[3]

Under these circumstances, we find that the trial court's March 6 order was a grant of only partial summary judgment to Moore, and thus the July 17 order granting summary judgment to Bristol was not the final judgment in the case. Rather, the October 9 order appears to

---

[3] Because the October 9 order was issued after the appeal was filed in this case, nothing in this opinion should be construed as addressing the merits of that order. See *Bloomfield v. Bloomfield*, 282 Ga. 108, 112 (5) (646 SE2d 207) (2007).

be the final judgment in the case as it disposed of all claims and resolved all remaining issues. See *McKesson Corp. v. Green*, 286 Ga. App. 110 (1) (648 SE2d 457) (2007) (order deciding objection to voluntary dismissal represented final judgment in the case). And although the July 17 order was appealable under OCGA § 9-11-56 (h), we have no jurisdiction in this appeal to consider Patterson's claims regarding the March 6 order granting partial summary judgment to Moore. "[W]here [an appellant fails] to bring a timely appeal from a grant of partial summary judgment, [he cannot] obtain appellate review of that ruling in an appeal from a subsequent grant of partial summary judgment, where the latter order did not constitute a final judgment." (Citation omitted.) *Hutchison v. Nat. Svcs. Indus.*, 191 Ga. App. 885, 886 (1) (383 SE2d 212) (1989).

Accordingly, Moore's motion to dismiss is granted, and any arguments addressing the March 6 order will be disregarded.

2. Turning to the remaining issues, we first address Patterson's contention that the trial court erred in granting Bristol's motion to open default and in denying his motion for reconsideration of that issue.[4]

OCGA § 9-11-55 (b) governs this issue, and it provides that

> a prejudgment default may be opened on one of three grounds *if* four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense.

(Citation omitted; emphasis in original.) *Constructamax, Inc. v. Andy Bland Constr.*, 280 Ga. App. 403, 404 (1) (634 SE2d 168) (2006). The decision whether to open a default on these grounds rests within the discretion of the trial judge. Thus, "[t]he sole function of an appellate court reviewing a trial court's denial of a motion to open default is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion

---

[4] Although these orders were not themselves directly appealable, "our Supreme Court held that when a direct appeal is taken, any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be raised on appeal and reviewed and determined by the appellate court." (Punctuation and footnote omitted.) *Schoenbaum Ltd. Co. v. Lenox Pines*, 262 Ga. App. 457, 459 (1) (a) (585 SE2d 643) (2003), citing *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980). The rule regarding motions for partial summary judgment is clearly an exception to this principle. *Hutchison v. Nat. Svcs. Indus.*, 191 Ga. App. at 886 (1). Because the default orders are sufficiently connected to the summary judgment order, as both deal with the issue of Bristol's liability in the case, we will consider these issues on appeal.

based on the facts peculiar to each case." (Citation and footnote omitted.) *Gilliam v. Love*, 275 Ga. App. 687 (621 SE2d 805) (2005).

(a) Patterson first argues that the trial court erred in ignoring the "strict interpretation" requirement of OCGA § 9-11-55 (b) which, he contends, dictates that a defendant's verified answer standing alone expressly contain a motion to open default or a legal excuse. He apparently is asserting that Bristol's motion to open the default should have been denied because it was not contained in the company's verified answer.

This argument is without merit and relies upon a misreading of this Court's decision in *Roberson v. Gnann*, 235 Ga. App. 112 (508 SE2d 480) (1998).[5] Nothing in OCGA § 9-11-55 (b) expressly requires that a defendant insert its motion to open default within the four corners of a verified answer. Rather, the statute imposes the four conditions noted above, and Bristol complied with each of these conditions. The motion was verified, and it announced that Bristol had responsive pleadings to file instanter, was ready to proceed to trial and had a meritorious defense. Indeed, Bristol contemporaneously filed a verified answer to the complaint setting out its defenses. See *Pinehurst Baptist Church v. Murray*, 215 Ga. App. 259, 261-262 (1) (450 SE2d 307) (1994). We find no error.

(b) He next asserts that the trial court erred in finding that Bristol's action in forwarding the complaint to an independent insurance agent, but failing to verify that an answer had been filed, constituted excusable neglect. Moore's affidavit in support of the motion to open default stated that after he forwarded the complaint to his agent Woodall, he spoke with him on several occasions regarding the status of the matter. He was assured on these occasions that it was being handled. Once he learned that Woodall had sent the complaint to the wrong insurer and no answer had been filed, he acted promptly to obtain legal counsel and begin his defense.

"[I]n cases such as this, no two are alike and each must stand on its own merits. The facts in each case are different and you must look at each in the light of the facts peculiar to that particular case." *Cobb County Fair Assn. v. Boyle*, 143 Ga. App. 754, 756 (240 SE2d 136) (1977). But in cases under similar facts, where a default occurs after a defendant forwards a complaint to his local agent or to the insurer itself expecting the insurer to provide a defense, courts have generally focused on two factors in determining whether excusable neglect exists: "the defendant's diligence and the insurer's assurance that it

---

[5] In that case the defendant initially filed only a verified answer and a response to the plaintiff's motion for default judgment. The language relied upon was simply the court's statement that those documents failed to meet the requirements of OCGA § 9-11-55 (b). *Roberson v. Gnann*, 235 Ga. App. at 114 (4).

[was] handling the case." (Citations omitted.) *Follmer v. Perry*, 229 Ga. App. 257, 259 (1) (493 SE2d 631) (1997). Here, the undisputed evidence is that Moore contacted his local insurance agent on several occasions and was assured that the matter was being properly handled. While Moore did not contact Bristol's insurer directly, we cannot say that the trial court abused its discretion in finding excusable neglect under the facts of this case. See *Pinehurst Baptist Church v. Murray*, 215 Ga. App. at 262 (2).

Moreover, as noted above, the trial court held a hearing on the above-referenced matter, and it is unclear what evidence, if any, was presented as to Bristol's attempts to ensure that an answer was filed on its behalf. "In the absence of a transcript, and there being a presumption in favor of the regularity of court proceedings, it must be assumed that the trial court's findings are supported by sufficient competent evidence and its judgment is thus affirmed." (Citation and punctuation omitted.) *Johnston v. Johnston*, 281 Ga. 666, 668 (641 SE2d 538) (2007).

(c) Patterson further contends that the trial court should have construed contradictory statements against Bristol under *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (1) (343 SE2d 680) (1986). He asserts that Bristol gave two contradictory answers in response to the same request for admission. When asked to respond to the statement that "Bristol Timber has no reasonable excuse for not filing a response to the Plaintiff's Complaint," Bristol stated on February 14, 2005, "Bristol Timber denies reasonable excuse forwarded to claims depart. for insurance to handle for them." Bristol subsequently filed a new response, without explanation, changing the answer to that question to: "No, Bristol Timber Company does have a reasonable excuse because it acted in the ordinary course of business in such affairs by referring the Complaint to its insurance agent." The trial court expressly found that these two statements were not self-contradictory. The court also stated, "In any event, the issue was discussed at the March 4 hearing and explained to the satisfaction of the Court."

Under *Prophecy*, "a party's self-conflicting testimony is to be construed against him unless a reasonable explanation for the contradiction is offered." (Citations omitted.) *Hudson v. Swain*, 282 Ga. App. 718, 722 (639 SE2d 319) (2006). Bristol's first, poorly worded response to the request for admission is clearly ambiguous. But the company's responses to other admissions make clear that Bristol was not intending to concede the default issue. The next three responses for example state that Bristol is claiming excusable neglect and providential cause and that this was a proper case for the court to open default. Other responses indicate that Bristol relied upon its insurance agent to properly forward the complaint and were denying

liability in the case. Under these circumstances, we agree with the trial court that the two responses cannot reasonably be interpreted as self-contradictory. But even if they could be so interpreted, Bristol apparently offered an excuse for the disparity that satisfied the trial court. Without a transcript, we cannot address the factors relied upon by the court in reaching this conclusion.

Patterson's arguments, therefore, are without merit, and we find no error in the trial court's decision to open the default. As this Court has previously noted,

> the rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme situations. Whenever possible cases should be decided on their merits for default judgment is not favored in law. Our courts have expressed a policy of liberality toward motions for relief from entry of default and have resolved doubts in favor of the party seeking relief so that the case can be heard on the merits. Generally, a default should be set aside where the defendant acts with reasonable promptness and alleges a meritorious defense.

(Citation, punctuation and footnote omitted.) *Gilliam v. Love*, 275 Ga. App. at 688.

3. Patterson further contends that the trial court erred in granting summary judgment to Bristol on the ground of tort immunity under OCGA §§ 34-9-8 (a) and (d) and 34-9-11. He asserts that the trial court erred by considering the transport of finished goods a substantial service or essential part of Bristol's contract to supply wood chips to Inland, instead of relying upon what he calls the shipper/carrier exception to workers' compensation tort immunity. We disagree.

OCGA § 34-9-8 provides, in pertinent part:

> (a) A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer. . . . (d) This Code section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute [the] work or which are otherwise under his control or management.

Any company falling under this definition is considered a "statutory employer" of its subcontractor's injured employee. *Carver v. Jasper Constr. Co.*, 183 Ga. App. 485 (359 SE2d 183) (1987). Statutory employers are immune from tort claims under OCGA § 34-9-11, and the employee is limited to recovery under the workers' compensation laws. This immunity applies even if the employer never paid the injured employee workers' compensation benefits, or even if the employer has been indemnified from paying such benefits. *Wright Assoc. v. Rieder*, 247 Ga. 496, 500 (1) (277 SE2d 41) (1981); *Bossard v. Atlanta Neighborhood Dev. Partnership*, 254 Ga. App. 799, 805 (5) (564 SE2d 31) (2002).

Bristol contracted, inter alia, to supply wood chips to Inland, which included the delivery of such wood chips. Bristol hired Brownlow to haul the wood chips from Bristol's loading dock to Inland. Patterson was injured on Bristol's premises in the course of his work for Brownlow in performance of this contract. These facts fall squarely within the language of OCGA § 34-9-8 (a), and therefore, we agree with the trial court's conclusion that under these circumstances Bristol was a principal contractor and Brownlow was a subcontractor hired to aid Bristol in the completion of its contract with Inland. Accordingly, Bristol was a statutory employer under the Workers' Compensation Act entitled to tort immunity. *Carver v. Jasper Constr. Co.*, 183 Ga. App. at 485-486 (1).

Patterson asserts, however, that Bristol cannot be considered his statutory employer, because he was merely delivering Bristol's product, relying upon *Gramling v. Sunshine Biscuits*, 162 Ga. App. 863 (292 SE2d 539) (1982). But that case is distinguishable from the case before us:

> There, the contractual relationship was merely that of shipper and carrier; here, [Patterson's] employer is more than merely a carrier who delivered something for the shipper: it worked pursuant to a subcontract based on the prime contract between [Bristol and Inland]. Furthermore, the other reason statutory employer status was denied to the shipper in *Gramling* was that the injury did not take place on the shipper's premises; the injury here did take place on [Bristol's] work site. *Gramling* has no application in this case and the trial court did not err in granting summary judgment to [Bristol].

*Carver v. Jasper Constr. Co.*, 183 Ga. App. at 486 (2).

We find the other cases relied upon by Patterson are also clearly distinguishable. See *Gray Building Systems v. Trine*, 260 Ga. 252 (391 SE2d 764) (1990) (holding OCGA § 34-9-8 (a) does not apply

where injured employee worked for company who merely contracted to provide goods to the principal contractor); *Western Elec. Co. v. Capes,* 164 Ga. App. 353 (296 SE2d 381) (1982) (contractor not statutory employer where injured employee worked for company who merely filled the vending machines at a plant engaged in the contractual work of manufacturing electric cables).

Accordingly, we affirm the trial court's grant of summary judgment to Bristol.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 9, 2007.

*William H. Stoll,* for appellant.
*Bray & Johnson, H. Michael Bray, Lauren L. McKenzie, Mathew A. Baker, Richard A. Jones,* for appellees.

