## A00A0407. WEST v. BRIGGS & STRATTON CORPORATION.
(536 SE2d 828)

RUFFIN, Judge.

Michael West was injured on a construction project when he fell into a pit that had been covered by a piece of plywood. At the time, he was working for a painting contractor, Augusta Carolina Painting.

---

The pit had been constructed and maintained by the flooring contractor, M. B. Kahn Construction Company (Kahn). West sued Briggs & Stratton Corporation (Briggs), the owner of the property; Hunzinger Construction Company (Hunzinger), the construction manager; and Kahn, alleging that each defendant had a duty to ensure that the premises were safe and to warn West of any danger. The trial court granted summary judgment to Briggs on West's claim for damages, holding that Briggs owed no duty to West because it had relinquished control over that portion of the premises where he was injured. For reasons discussed below, we reverse.

In 1994 or 1995, Briggs started construction of an engine manufacturing plant in Statesboro. This plant consisted of two buildings, including a 300,000-square-foot manufacturing building. Briggs did not hire a general contractor for the project but entered directly into contracts with various contractors, including Kahn and Augusta Carolina. Briggs hired Hunzinger as the "construction manager," with the general responsibility to provide advice regarding the project and to oversee the work of the various contractors. The written contract required Hunzinger to, among other things:

> [p]rovide administrative, management and related services as required to coordinate Work of the Contractors . . . [;]
> [o]btain satisfactory contractual and work performance from each of the Contractors . . . [and] [r]ecommend courses of action to [Briggs] when requirements of a Contract are not being fulfilled . . . [;]
> [r]eview the safety programs developed by each of the Contractors as required by their Contract Documents and applicable laws and coordinate the safety programs for the Project . . . [; and]
> [d]etermine that the Work of each Contractor is being performed in accordance with the requirements of the Contract Documents and guard [Briggs] against defects and deficiencies in the Work. . . . [R]equire special inspection or testing . . . of Work not in accordance with the provisions of the Contract Documents . . . [and] [s]ubject to review by the Architect [an agent appointed by Briggs], reject Work which does not conform to the requirements of the Contract Documents.

The contract further provided that Hunzinger

> shall not be responsible for construction means, methods, techniques, sequences and procedures employed by Contractors in the performance of their Contracts, and shall not be

responsible for the failure of any Contractor to carry out Work in accordance with the Contract Documents not discoverable in performing this Contract.

Briggs hired Kahn as the flooring contractor for the project. Kahn's responsibilities included pouring concrete for floors, as well as building large pits used for storing machinery and products. The written contract between Briggs and Kahn provided that Kahn

shall supervise and direct the Work,[1] using [its] best skill and attention. [Kahn] shall be solely responsible for all construction means, methods, techniques, sequences and procedures, and shall coordinate all portions of the Work under the Contract, subject to the overall coordination of [Hunzinger].

With respect to safety, the contract provided that Kahn

shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work. . . . [Kahn] shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to . . . all employees on the Work and all other persons who may be affected thereby. . . . [Kahn] shall erect and maintain, as required by existing conditions and the progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities.

The contract stated that "[t]he Architect and [Hunzinger] will be [Briggs'] representatives during construction" and that "all instructions to [Kahn] will be forwarded through [Hunzinger]." Although the contract stated that "[t]he Architect and [Hunzinger] shall at all times have access to the Work wherever it is in preparation and progress," it provided that

[n]either the Architect nor [Hunzinger] will be responsible for or have control or charge of construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and neither will be responsible for [Kahn's] failure to carry out

---

[1] The term "Work" referred to the work required to be performed by Kahn under the contract, while the term "Project" referred to the entire construction project.

the Work in accordance with the Contract Documents. Neither the Architect nor [Hunzinger] will be responsible for or have control or charge over the acts or omissions of [Kahn], [its] Subcontractors, or any of their agents or employees, or any other persons performing any of the Work.

Briggs hired Augusta Carolina as the painting contractor for the project. Apart from a description of the work to be performed, the contract with Augusta Carolina was substantially similar to the one with Kahn.

West began working for Augusta Carolina on July 28, 1995. On his first day at work, he arrived at 5:00 p.m. and spent a few hours painting iron beams running across the top of the building in the main manufacturing building. At about 9:30 p.m., West's supervisor told him to clean up the area in preparation for painting another beam. West testified that the area had to be cleaned so that they could operate lifters used in painting the high beams. West went to move a heavy wooden pallet that was sitting on top of a piece of plywood on the floor. When he lifted the pallet, he fell through the plywood into a pit and was injured. West testified that the plywood was in fact two pieces that were "butted up together where you couldn't see that it was split." When he lifted the pallet, he fell between the two pieces. Although he caught himself before he fell all the way into the pit, the heavy pallet hit him on the head. West testified that he did not realize there was a hole under the plywood. There were no barricades or warning tape around the area, and he believed the plywood was simply lying on the concrete floor.

The pit West fell into had been built by Kahn. Tommy DuBose, Kahn's designated representative, testified that Kahn's standard procedure after building a pit was to place two-by-four boards across the pit and then place plywood over the boards. Kahn would then place four posts around the pit and put yellow warning tape around them. DuBose testified that the plywood was meant to support the weight of a person walking over the pit, although it would not support machinery such as a forklift.

DuBose testified that he would try to inspect the various pits between 9:00 and 10:00 a.m. and again between 3:00 and 5:00 p.m., when Kahn employees left the premises. He said that other workers would often take down the barricades and warning tape at night while Kahn was not on the premises and that "when we come back most of the time barricades would be down or . . . such stuff as that." Sometimes he would come back from lunch and find that a barricade had been taken down. He testified that he would generally have this problem only in "congested" areas where other contractors were

working. He also testified that "[a]s far as uncovering anything, when [Briggs] started putting their machinery in [the pits,] they uncovered the hole and put their own machinery in."

DuBose testified that the pit West fell into was located in the back of the building near the loading docks. He said that Kahn had finished its work on that portion of the premises and had moved on to another area. DuBose testified that Kahn's responsibility for an area ended when it had completed its work there, placed barricades, and moved on to another area, although he would continue to inspect the entire plant twice a day. He said that painters, plumbers, and electricians were still working in the area where West fell.

In its summary judgment motion, Briggs argued that it owed no duty to West because it had relinquished possession of the premises to an independent contractor. The trial court granted the motion on this basis.

It is well settled that

> [a]n owner or occupier of land is liable in damages to invitees who come upon his land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe. . . . Under this principle is found the duty of an owner of premises to an individual contractor and his employees who lawfully come upon the premises in the performance of a contract between the owner and the contractor because the independent contractor and his employees are invitees. Thus, an owner having work done on his premises by an independent contractor, who has actual or constructive knowledge of potential dangers on the premises, owes a duty to the contractor to give warning of, or use ordinary care to furnish protection against, such dangers to the contractor and his employees who are without actual or constructive notice of the dangers, and which could not be discovered by them in the exercise of ordinary care.[2]

As in all premises liability cases, the true basis of the owner's liability is its "superior knowledge of the existence of the defect or hazard that may subject an invitee to an unreasonable risk of harm."[3]

However, a landowner is not liable if "full possession and complete control of the land were delivered and surrendered to an independent contractor."[4] If the owner surrenders a portion of the premises to an independent contractor, the owner "is relieved of his duties

---

[2] (Citations omitted.) *Amear v. Hall*, 164 Ga. App. 163, 166 (2) (296 SE2d 611) (1982).

[3] Id. at 167.

[4] *Towles v. Cox*, 181 Ga. App. 194, 195 (1) (351 SE2d 718) (1986).

with regard to the portion of the premises which he no longer controls."[5] In this regard, "[p]ossession may be defined as having personal charge of or exercising the rights of management or control over the property in question. Custody and control are the commonly accepted and generally understood incidents of possession."[6]

Taking all of these principles together, we have held that

[a]lthough property owners owe a duty to their own invitees, they owe no such duty to employees of or others invited upon the premises by an independent contractor hired to do work on the premises if two conditions exist: 1) the owner has relinquished possession of the premises, in whole or in part[,] and 2) the owner does not have the right and does not actually control or direct the work done.[7]

Briggs contends that it surrendered possession of that portion of the premises in which the accident occurred to Kahn, that Kahn assumed the responsibility of ensuring that the premises were safe, and that Briggs retained no right to control the manner in which Kahn performed its work. Accordingly, Briggs contends that it owed no duty to West. Briggs relies primarily upon *McClure v. Equitable Real Estate Investment Mgmt.*[8] and *Englehart v. OKI America.*[9] In each of those cases, an owner hired a general contractor to perform a project, and the general contractor was required by contract to take all necessary safety precautions. In each case, an employee of a subcontractor was injured while working on the project. We held that the owner in each case owed no duty to the employee because it had relinquished possession of the premises to the general contractor, which assumed the duty of keeping the premises safe.

Neither *McClure* nor *Englehart*, however, explicitly analyzed what it means to relinquish possession of premises to an independent contractor. Rather, the primary issues in those cases were whether the general contractor assumed the duty of making the premises safe and whether the owner retained any rights of control over the contractor's work. The issue here is somewhat different. In this case, the contractor Briggs claims was responsible for ensuring the safety of the premises — Kahn — was not a general contractor with overall responsibility for the entire project. Rather, it was one of many contractors working on the same project and in the same area. Briggs

[5] Id. at 195-196.

[6] (Punctuation omitted.) Id. at 196.

[7] *McClure v. Equitable Real Estate Investment Mgmt.*, 195 Ga. App. 54, 55 (392 SE2d 272) (1990).

[8] Id.

[9] 209 Ga. App. 151 (433 SE2d 331) (1993).

expressly reserved the right to use its own employees or other contractors on the project and undertook to coordinate the work of such persons with the work being performed by Kahn. Moreover, unlike the situation in *McClure* or *Englehart*, the person who was injured was not an employee of one of Kahn's own subcontractors. Rather, he was an employee of Augusta Carolina, a separate contractor hired directly by Briggs. Thus, West was not on the premises at the invitation of Kahn, but at the invitation of Briggs.

As *McClure* makes clear, whether the owner retains control over the work of an independent contractor is a separate question from whether it relinquished possession of the premises to such contractor. Only if both conditions are satisfied is the owner relieved of any duty toward invitees. Thus, even if Kahn agreed to maintain a safe workplace and Briggs did not retain the right to oversee the details of Kahn's work, Briggs would not be relieved of any duty toward its own contractors unless it relinquished possession of the premises to Kahn.

As discussed above, possession means "having personal charge of or exercising the rights of management or control over the property in question," and "[c]ustody and control are the commonly accepted and generally understood incidents of possession."[10] In *Little v. Liberty Sav. Bank*,[11] the owner of a building hired an independent contractor to replace the carpeting in the hallway. We noted, however, that the hallway was kept open for use by the owner's tenants or invitees. Thus, we held that

> it cannot be said that [the independent contractor] had possession and control of the premises to the exclusion of [the owner] such that [the owner] had no duty of care as an owner for the safety of invitees on the premises. Under the circumstances, whether [the owner or the contractor] or both were in control of the premises . . . should be decided by the jury.[12]

As *Little* demonstrates, possession implies the ability to control access to the premises and to exclude others therefrom. In this case, it does not appear that Kahn had the ability to exclude other contractors hired by Briggs, such as Augusta Carolina, from the premises in general or from that portion of the premises in which West was injured in particular. Although Kahn contractually agreed to maintain a safe work environment, Briggs reserved the right to hire other

---

[10] *Towles*, supra at 196.
[11] 191 Ga. App. 732 (382 SE2d 734) (1989).
[12] (Punctuation omitted.) Id. at 733.

contractors to work on the entire premises and exercised that right by allowing Augusta Carolina to work in the area where the accident occurred.

Moreover, the contract provided that Hunzinger, as construction manager and Briggs' representative, would "schedule and coordinate the Work of all contractors on the Project including their use of the site." According to DuBose, Kahn was not on the premises after 5:00 p.m., and other contractors worked on the premises while Kahn was not present. These were not subcontractors working pursuant to a contract with Kahn, but were independent contractors working directly at the invitation of Briggs. Furthermore, DuBose testified that Kahn's responsibility for an area ended after it had moved on to another area. Under all of these circumstances, we cannot say as a matter of law that Briggs delivered exclusive possession of the premises to Kahn.

Nor can we say that Briggs delivered exclusive possession of the premises to Hunzinger. As discussed above Hunzinger was not the general contractor for the project, but was simply the construction manager. Hunzinger's duties consisted primarily of providing advice to Briggs and acting as Briggs' representative in coordinating the work of the various independent contractors, which received their authority directly from Briggs. Hunzinger's contract specifically stated that it was not responsible for the "construction means, methods, techniques, sequences and procedures employed by Contractors in the performance of their Contracts." Although Hunzinger had a duty to "review the safety programs developed by each of the Contractors as required by their Contract Documents and applicable laws and coordinate the safety programs for the Project," it was not responsible in the first instance for developing or implementing such safety programs. Indeed, Kahn's and Augusta Carolina's contracts with Briggs both stated that Hunzinger would not be "responsible for or have control or charge of . . . safety precautions and programs in connection with the Work." If a contractor failed to fulfill its contract or take satisfactory corrective action, Hunzinger was required to "[r]ecommend courses of action to [Briggs]." Hunzinger's ability to reject any work of a contractor was "[s]ubject to review by the Architect," a representative appointed by Briggs.

Under all of these circumstances, we cannot say as a matter of law that Briggs surrendered possession and control of the premises to either Kahn or Hunzinger. Accordingly, the trial court erred in granting summary judgment to Briggs on this basis. The only other basis arguably asserted by Briggs in its summary judgment motion was that West failed to exercise reasonable care for his own safety. In

this regard, Briggs cites *Torrington Co. v. Hill*[13] for the proposition that "[a]n individual contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract."[14] In this case, however, the evidence simply shows that West stepped on a piece of plywood on the floor. There were no barricades or other indications that the plywood was covering a pit. We cannot say that the mere fact that a piece of plywood is lying on the floor on a construction site, with a wooden pallet on top of it, necessarily places a worker on notice that there is a pit underneath. Indeed, since barricades were a required safety device, their absence would suggest that there was not in fact a pit. Moreover, even if West should have known that there was a pit, DuBose testified that the plywood was intended to support the weight of a man walking across it. In *Robinson v. Kroger Co.*,[15] the Supreme Court held that

> the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication. . . . [T]he issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation.[16]

Whether West exercised ordinary care in stepping on the plywood is, at a minimum, a question for the jury, and Briggs was not entitled to summary judgment on this basis.[17]

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 7, 2000.

*Montlick & Associates, Alan Y. Saltzman, Killian & Boyd, Robert P. Killian*, for appellant.

---

[13] 219 Ga. App. 453 (465 SE2d 447) (1995).

[14] Id. at 455 (1).

[15] 268 Ga. 735 (493 SE2d 403) (1997).

[16] Id. at 748.

[17] We note that Briggs did not assert that it was entitled to summary judgment because it lacked knowledge of the danger or because West's knowledge of the danger was superior. Accordingly, West was not required to present evidence on these issues in order to survive summary judgment, and we do not consider these issues on appeal. See *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

*Troutman Sanders, Mark S. VanderBroek, David C. Vigilante, Thomas E. Reilly*, for appellee.