**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 2, 2012**

# In the Court of Appeals of Georgia

A12A1014.  CARR  et  al.  v.  FEDEX  GROUND  PACKAGE
SYSTEM, INC.

MCFADDEN, Judge.

This is an action for personal injuries, which Lester Carr sustained while working at a FedEx facility. His wife, Charlene Carr – individually and as his guardian and the conservator over his person and property – appeals from the grant of summary judgment to FedEx Ground Package System, Inc. ("FedEx"). FedEx contends that the action is barred by the exclusive remedy provision of the Workers' Compensation Act. Because, under the terms of the Act, FedEx was Lester Carr's statutory employer at the time of the injury, we agree.

Charlene Carr argues in the alternative that we should remand for additional discovery. But as her request was not presented in the first instance to the trial court, it presents nothing for us to review.

We therefore affirm.

1. *Facts and proceedings below.*

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the nonmovant." (Citations and punctuation omitted.) *Stolte v. Hammack*, 311 Ga. App. 710 (716 SE2d 796) (2011).

So viewed, the evidence shows that on July 2, 2007, Lester Carr was seriously injured in a fight with a FedEx employee at a FedEx facility. At the time, Lester Carr was at the facility pursuant to his work as a truck driver for J. Wigg Trucking, Inc., a sole proprietorship owned by Jethro Wiggins ("Wiggins") that had a contract to provide trucking services to FedEx.

In a separate proceeding, Charlene Carr obtained workers' compensation benefits on Lester Carr's behalf from Wiggins. Charlene Carr then filed the instant personal injury action against FedEx, alleging negligent hiring, supervision and

retention, as well as failure to maintain safe premises. The trial court granted summary judgment to FedEx on the ground that FedEx was a statutory employer immune from liability under the exclusive remedy provision of the Workers' Compensation Act, OCGA § 34-9-11.

2. *Exclusive remedy and statutory employer provisions of the Workers' Compensation Act.*

The exclusive remedy provision of the Workers' Compensation Act is as follows.

> The rights and remedies granted to an employee by [the Act] shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tortfeasor, [with certain exceptions].

OCGA § 34-9-11 (a). "Therefore, where the Act applies, it provides the employee's exclusive remedy against his employer and precludes recovery on a tort claim by an injured employee against his employer." (Citations and punctuation omitted.) *Teasley v. Freeman*, 305 Ga. App. 1, 2 (1) (699 SE2d 39) (2010). See also *Ga. Dept. of*

*Human Resources v. Joseph Campbell Co.*, 261 Ga. 822, 822-823 (1) (411 SE2d 871) (1992).

The statutory employer provision of the Act, OCGA § 34-9-8, makes principal or intermediate contractors secondarily liable for workers' compensation benefits for injured employees of a subcontractor. *Warden v. Hoar Constr. Co.*, 269 Ga. 715, 715-716 (1) (507 SE2d 428) (1998); *Yoho v. Ringier of Amer.*, 263 Ga. 338, 341 (434 SE2d 57) (1993); *Patterson v. Bristol Timber Co.*, 286 Ga. App. 423, 430 (3) (649 SE2d 795) (2007). Thus, the statutory employer doctrine

> permits liability for workers' compensation benefits to attach vicariously against someone other than an injured employee's employer. In return, the vicariously liable party is immune from tort liability for the injury suffered [pursuant to OCGA § 34-9-11]. By this section the legislature intended to protect persons working for subcontractors who are financially irresponsible or who are otherwise exempt from the provisions of the Workers' Compensation Act.

(Citations omitted.) *Manning v. Ga. Power Co.*, 252 Ga. 404, 405 (314 SE2d 432) (1984).

Immunity from tort actions under the exclusive remedy provision is a correlative benefit of the statutory employer's liability to pay workers' compensation benefits. See *Carver v. Jasper Constr. Co.*, 183 Ga. App. 485 (1) (359 SE2d 183)

4

(1987). It extends to statutory employers even if the workers' compensation benefits actually were paid by another party, such as the subcontractor. See *Wright Assocs. v. Rieder*, 247 Ga. 496, 499-500 (1) (277 SE2d 41) (1981); *Patterson*, 286 Ga. App. at 430; *Redd v. Stanfield*, 217 Ga. App. 573, 574 (2) (458 SE2d 394) (1995). "It is a statutory employer's *potential* liability for workers' compensation benefits rather than actual liability that triggers the tort immunity." (Emphasis in original.) *Maguire v. Dominion Dev. Co.*, 241 Ga. App. 715, 717 (527 SE2d 575) (1999).

3. *FedEx's status as a statutory employer.*

Charlene Carr argues that FedEx was not Lester Carr's statutory employer – and therefore not entitled to tort immunity under the exclusive remedy provision – for two reasons: the language of FedEx's contract with Wiggins precludes it from being a statutory employer and FedEx is not a "contractor" under OCGA § 34-9-8. We find no merit in either argument.

a. *The contract language does not preclude FedEx from being a statutory employer.* Charlene Carr argues that FedEx was not Lester Carr's statutory employer because the language in FedEx's contract with Wiggins shielded it from any workers' compensation liability. She points to a term stating that Wiggins "will provide these [identified] services strictly as an independent contractor, and not as an employee of

5

FedEx Ground *for any purpose.*" (Emphasis supplied.) And she asserts that a term requiring Wiggins to obtain and keep in force workers' compensation benefits, and to provide FedEx with proof of insurance coverage, insulated FedEx from any potential workers' compensation liability.

But, "[n]o contract or agreement, written, oral, or implied, nor any rule, regulation, or other device shall in any manner operate to relieve any employer in whole or in part from any obligation created by this chapter except as otherwise expressly provided in this chapter." OCGA § 34-9-10. FedEx could not have contracted to relieve itself from any obligation created by the Act. See *Tillman v. Moody*, 181 Ga. 530, 532 (182 SE 906) (1935) (interpreting substantively identical predecessor Code provision).

Nevertheless, Charlene Carr contends that our opinion in *Gramling v. Sunshine Biscuits*, 162 Ga. App. 863 (292 SE2d 539) (1982), requires us to interpret the contract to relieve FedEx of its workers' compensation obligations to Wiggins's employees. We disagree. In *Gramling*, we held that a shipper was not the statutory employer of a truck driver employed by a third party to deliver the shipper's goods to a customer. Id. at 864. We did interpret a provision of a contract between the shipper and the third party "as a disclaimer on the part of the shipper of any

6

responsibility for workers' compensation payments to [the third party's] employees," but we held that the contract language was "not necessarily controlling of the issue" of the shipper's status as statutory employer. Id. Rather, the shipper in *Gramling* was not liable for workers' compensation benefits (and thus not entitled to exclusive remedy protections as a statutory employer) because the driver's injury did not occur on the shipper's premises. Id. This dispositive fact distinguishes *Gramling* from cases, such as the instant case, in which the injury occurred on the alleged statutory employer's work site. See *Patterson v. Bristol Timber Co.*, 286 Ga. App. 423, 430 (3) (649 SE2d 795) (2007).

Nor do we read the contract as at attempt by FedEx to relieve itself of its obligations under the Act. FedEx's contract with Wiggins merely undertook to establish that *Wiggins* was an independent contractor rather than an employee of FedEx. The term at issue did not affect whether Wiggins's employee, Lester Carr, was a statutory employee of FedEx. See *Wright Assocs.*, 247 Ga. at 498 (1) (a principal contractor is the statutory employer of the employee of a subcontractor who is an independent contractor). Cf. *Dennis Perry Homes v. Companion Property & Cas. Ins. Co.*, 311 Ga. App. 706, 708 (1) (716 SE2d 798) (2011) ("the law does not permit the employer, simply by designating certain of his employees independent contractors,

7

to by-pass the work[ers'] compensation law, and this is true, although the employer may bona fide believe that the end referred to may be accomplished in the manner mentioned") (citation and punctuation omitted).

Our Supreme Court has rejected the argument, which Charlene Carr ascribes to FedEx, that a contract term whereby a principal requires a subcontractor to carry workers' compensation insurance insulates that principal from potential liability and precludes it from being a statutory employer.

> The purpose of [OCGA § 34-9-8] is to ensure that employees in construction and other industries are covered by workers' compensation. In order to do so, it places an increased burden, in the form of potential liability for workers' compensation benefits, on the statutory employer. This encourages the statutory employer to require subcontractors to carry workers' compensation insurance. The fact that the statutory employer reacts to the statute in the manner intended by the legislature should not result in a penalty on the statutory employer [in the form of potential tort liability]. . . . The quid pro quo for the statutory employer's potential liability is immunity from tort liability.

*Wright Assocs.*, 247 Ga. at 499-500 (1). See also *Warden*, 269 Ga. at 716 (1) (to deprive principal contractor of tort immunity because principal contractor required subcontractor to carry workers' compensation insurance "would undercut the purpose of § 34-9-8 to ensure that employees are covered by workers' compensation").

8

b. *FedEx is a "contractor."* Charlene Carr argues that FedEx is not liable for workers' compensation as a statutory employer because it is not a "contractor" subject to workers' compensation liability under OCGA § 34-9-8. She asserts that, unlike "general contractors in traditional construction cases," FedEx had "no contract with another to provide a good or service." We disagree.

OCGA § 34-9-8 (a) provides that "[a] principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." OCGA § 34-9-8 (a) applies only where the principal has contracted to perform certain work for another and has subcontracted some or all of that work. See *Yoho*, 263 Ga. at 339; *Ramcke v. Ga. Power Co.*, 306 Ga. App. 736, 737-738 (1) (703 SE2d 13) (2010). "[T]he statute embraces all who are in the venture with the hope of making a profit out of the *doing* of the work as distinguished from one out of the use or disposition of the completed project." (Citations and punctuation omitted; emphasis in original.) *Yoho*, 263 Ga. at 342.

Our opinion in *Patterson v. Bristol Timber Co.*, supra, 286 Ga. App. 423, illustrates this distinction. In *Patterson*, a timber company entered into a contract to supply wood chips to a customer and subcontracted with a trucking company to load

9

and transport the wood chips to the customer. A truck driver employed by the trucking company was injured while loading wood chips at the timber company's premises. The timber company argued that it was immune from the truck driver's personal injury suit on the ground that it was the driver's statutory employer. We agreed and affirmed a grant of summary judgment to the timber company, holding that the truck driver was injured while in the course of his work on the timber company's premises in the performance of the timber company's contract with its customer, which included the delivery of the wood chips. Id. at 430 (3). By working toward the performance of the timber company's contract with its customer, the trucking company with which the injured driver was employed was "more than merely a carrier who delivered something for a shipper." (Citation omitted.) Id. at 430. We contrasted this scenario with that in *Gramling v. Sunshine Biscuits*, supra, 162 Ga. App. at 864, which involved a truck driver working for a trucking company that merely carried goods shipped by a manufacturer to its customers. See *Patterson*, 286 Ga. App. at 430. We further contrasted *Gramling* because the truck driver in that case was not injured on the shipper's premises. Id.

FedEx argues, and we agree, that the work performed by Wiggins – package delivery – was done in performance of contracts FedEx had with others (FedEx's

10

customers), and thereby was analogous to the trucking company's work in *Patterson.* The record does not support Charlene Carr's contention that FedEx had no contracts with others to provide a service. Instead, it shows that FedEx agreed to provide delivery services to its customers through bills of lading containing the terms and conditions of carriage. See generally *McElveen v. Southern R. Co.*, 109 Ga. 249, 254 (34 SE 281) (1899) (a bill of lading is a contract for carriage). Because FedEx had a contractual obligation of performance to its customers, it was a "contractor." See *Yoho*, 263 Ga. 338, 341-341 ("[o]rdinarily, in common usage, a 'contractor' is one who undertakes to perform work for another") (citations and emphasis omitted). And it is clear that Wiggins, in its contract with FedEx, had agreed to perform on FedEx's behalf at least a portion of the work required for FedEx to fulfill its contractual delivery obligations to its customers – the work of actually delivering the customers' packages. Like the injured driver in *Patterson*, "[Lester Carr] was injured on [FedEx's] premises in the course of his work for [Wiggins] in performance of [FedEx's] contract[s]. These facts fall squarely within the language of OCGA § 34-9-8 (a)[.]" *Patterson*, 286 Ga. App. at 430.

Although, as Charlene Carr correctly notes, FedEx in this case did not have a pre-existing general contract with its customers that established its delivery

11

obligations to them, we do not find that this distinction freed FedEx from the obligations of a statutory employer to its subcontractors' employees set forth in the Act. The terms of FedEx's contract with Wiggins show that the parties entered into that contract in anticipation that FedEx subsequently would assume delivery obligations in contracts with customers and that Wiggins's drivers would assist in fulfilling those delivery obligations. We have not found any Georgia cases directly speaking to whether the putative statutory employer must have a pre-existing general contract with another for OCGA § 34-9-8 to apply. In *Hall v. 84 Lumber Co.*, 2011 U. S. Dist. LEXIS 22857 (S. D. Ga. 2011), however, the Southern District of Georgia construed Georgia law to hold that a company was a statutory employer where the company had an existing contract with a subcontractor to provide drivers to assist the company in fulfilling subsequently-arising contracts between the company and its customers.

Regardless of the timing, FedEx entered into its contract with Wiggins in specific furtherance of the contract obligations it anticipated owing to its customers, and Wiggins assumed responsibilities to FedEx specifically tied to those anticipated obligations. Simply put, had FedEx not subsequently entered into agreements to deliver packages for customers, Wiggins would have had no work to perform under

12

its contract with FedEx. To deny Wiggins's employees the benefits of OCGA § 34-9-8 (the potential workers' compensation liability of FedEx) simply because Wiggins contracted to help FedEx provide delivery services to its customers *before* FedEx contracted with customers to provide the services would give a driver directly hired by FedEx greater workers' compensation protection than a driver hired by a subcontractor to perform exactly the same work for FedEx. Such an outcome is neither required by the language of OCGA § 34-9-8 nor consistent with the legislative goals of the Workers' Compensation Act.

4. *Compensability of Lester Carr's injuries*.

Charlene Carr contends that genuine issues of material fact exist as to whether Lester Carr's injuries were compensable under workers' compensation as arising out of and in the course of his employment. See *Wade v. Georgia Diversified Indus.*, 240 Ga. App. 225, 226-228 (2) (522 SE2d 746) (1999) (conflicting evidence regarding whether plaintiff was injured in scope of employment can preclude employer from obtaining summary judgment under workers' compensation exclusive remedy provision). But it is undisputed that Lester Carr obtained workers' compensation for those injuries under a settlement with its immediate employer, Wiggins. Because Lester Carr settled his workers' compensation claim, his representative Charlene Carr

13

cannot avoid summary judgment by arguing that a genuine issue of material fact exists regarding the compensability of his injuries. See *Smith v. Ellis*, __ Ga. __ (__ SE2d __) (2) (Case No. S12A1174, decided Sept. 10, 2012).

      3. *Charlene Carr's request for remand.*

Charlene Carr argues that "[i]f the Court is disinclined to reverse the trial court's grant of summary judgment, the case should be remanded for further discovery regarding FedEx's claim to be a general contractor." A respondent to a summary judgment motion who contends that the motion is premature should invoke OCGA § 9-11-56 (f), which authorizes a court to order a continuance for further discovery in connection with summary judgment proceedings, "[s]hould it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition." The record does not demonstrate that Charlene Carr sought such relief from the trial court. Consequently, this argument does not enumerate any error of the trial court and presents nothing for us to review. See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) (this is a court for the correction of errors made by the trial court).

      *Judgment affirmed. Barnes, P. J., and Adams, J., concur.*