**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A1899.  MULLINAX  et  al  v.  PILGRIM'S  PRIDE
   CORPORATION.

A19A1900. MULLINAX et al v. RISING, INC.

A19A1901. MULLINAX et al v. HALL.

MILLER, Presiding Judge.

James Mullinax, a truck driver, was killed after he was run over by a forklift

on a farm while chickens were being caught and loaded for transport to a processing

facility. The decedent's wife filed suit against Pilgrim's Pride Corporation, the

chicken manufacturing company; Rising, Inc., the company that contracted with

Pilgrim's to catch and load the chickens for transport; and Garren Benton Hall, the

owner of the farm on which the accident occurred. Mullinax appeals from the trial

court's grant of summary judgment to Pilgrim's, Rising, and Hall. We determine that

(1) the trial court correctly granted summary judgment to Pilgrim's because Pilgrim's

was the decedent's statutory employer and was therefore immune from tort liability; (2) the trial court erred in granting summary judgment to Rising because a jury could conclude that Rising was negligent in leaving the forklift running, constituting at least one proximate cause of the decedent's injuries; and (3) the trial court erred in granting summary judgment to Hall because a fact issue exists regarding whether Hall, as the premises owner, breached his duty of care to the decedent. Therefore, in Case No. A19A1899, we affirm the grant of summary judgment to Pilgrim's, but in Case Nos. A19A1900 and A19A1901, we reverse the grant of summary judgment to Rising and Hall, respectively.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." (Citation omitted.) *Sanderson Farms, Inc. v. Atkins*, 310 Ga. App. 423 (713 SE2d 483) (2011).

As part of its operation to grow and process chickens for sale, Pilgrim's contracts with various entities and persons to perform some of the necessary work. At the time of the accident, Pilgrim's contracted with Garren Benton Hall to raise Pilgrim's birds on his farm. Pilgrim's also contracted with Rising, to catch the

2

chickens at designated farms and load them into cages. Finally, Pilgrim's contracted with Mountain Milk Hauling, Inc. to transport the grown birds from farms to a designated location.

The decedent was a truck driver who worked for Mountain Milk. On an early morning in September 2015, while it was still dark, the decedent was at Hall's farm during a chicken catch. One of Rising's forklift operators, Alejandro Camacho, was also working on the farm during the chicken catch. Camacho started a forklift and then went to use the bathroom, leaving the key in the ignition. A Mountain Milk employee, Thomas Sewell, who had been standing and talking with the decedent, observed the parked forklift and decided to use it to remove cages from the chicken house and load them onto the decedent's truck. Initially, while Sewell was loading the truck, he was able to see the decedent standing beside the truck. Eventually, however, while he reversed the forklift from the chicken house, he ran over the decedent. Sewell was not authorized to use the forklift and had been disciplined prior to the incident for operating the forklift without authorization.

A Workers' Compensation claim was filed against the decedent's employer, Mountain Milk, on the decedent's behalf. Mullinax, individually and in her capacities as the decedent's surviving spouse and the administratrix of the decedent's estate,

also filed these tort actions against Pilgrim's, Rising, and Hall, asserting numerous allegations of negligence. All three defendants filed motions for summary judgment. Pilgrim's contended that it was the decedent's statutory employer, and thus any claims against Pilgrim's Pride were barred by the exclusivity provision of the Workers' Compensation Act. Rising argued that it did not owe the decedent any legal duty of care, including any duty to prevent unauthorized and untrained persons from operating a forklift. Hall claimed that, although he owned the farm, he was only responsible for growing the chickens, he relinquished control of the area during the catch, and he had no responsibilities or duties regarding the chicken catch process.

After a hearing, the trial court granted summary judgment in favor of Pilgrim's, Rising, and Hall. First, the trial court determined that Pilgrim's was the decedent's statutory employer and that Mullinax's claims against the company were therefore barred by the exclusivity provision of the Workers' Compensation Act (OCGA §§ 34-9-8, 34-9-11 (a)). Second, with regard to Rising, the trial court determined that (1) there was no genuine factual dispute as to Rising's inspection of the forklift or its failure to remove unsafe equipment from service; (2) Rising had no duty to control Sewell, the Mountain Milk employee who operated the forklift; and (3) there was no genuine fact issue regarding a causal connection between Camacho's abandonment

4

of the forklift and the decedent's damages. Finally, as against Hall, the trial court ruled that Hall was justified in assuming that the decedent would realize the risk involved in traversing the unlit premises and that the decedent had voluntarily assumed the risk of injury. Mullinax appealed the trial court's grant of summary judgment to all three defendants.

*Case No. A19A1899*

1. In the first case, Mullinax argues that the trial court erred in granting summary judgment to Pilgrim's on the basis that Pilgrim's was the decedent's statutory employer under OCGA § 34-9-8 and that it was therefore immune from tort liability. Mullinax contends that (1) there is a fact issue regarding whether Pilgrim's exercised control over the farm; and (2) the statute does not apply to Pilgrim's because it is the owner of the enterprise. Regardless of whether Pilgrim's Pride exercised control over the farm, however, we determine that Pilgrim's was the decedent's statutory employer because (1) Pilgrim's was a principal contractor; and (2) the injury occurred on or in the premises where Pilgrim's had undertaken to execute work. Therefore, Mullinax's claims against Pilgrim's are barred by the exclusivity provision of the Workers' Compensation Act, and the trial court's grant of summary judgment was proper.

5

*a. Exclusive remedy and statutory employer provisions.*

The exclusive remedy provision of the Workers' Compensation Act reads as follows:

> The rights and the remedies granted to an employee by this chapter shall exclude and be in place of all other rights and remedies of such employee, his or her personal representative, parents, dependents, or next of kin, and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death[.]

OCGA § 34-9-11 (a). "Therefore, where the Act applies, it provides the employee's exclusive remedy against his employer and precludes recovery on a tort claim by an injured employee against his employer." (Citations and punctuation omitted.) *Teasley v. Freeman*, 305 Ga. App. 1, 2 (1) (699 SE2d 39) (2010). Relatedly, "[t]he statutory employer provision of the [Workers' Compensation] Act, OCGA § 34-9-8, makes principal or intermediate contractors secondarily liable for workers' compensation benefits for injured employees of a subcontractor." (Citation omitted.) *Carr v. FedEx Ground Package System, Inc.*, 317 Ga. App. 733, 734 (2) (733 SE2d 1) (2012). "Thus, so long as [Pilgrim's] was [the decedent's] statutory employer, it would enjoy immunity from a tort claim." (Citation omitted.) *Maguire v. Dominion Dev. Corp.*, 241 Ga. App. 715, 717 (527 SE2d 575) (1999). Although this tort immunity is an

6

affirmative defense, *Zaldivar v. Prickett*, 297 Ga. 589, 604 (2) (774 SE2d 688) (2015), "[w]hen the facts concerning an affirmative defense are uncontradicted, the matter may be disposed of by summary judgment[.]" (Citation omitted.) *Keene v. Herstam*, 225 Ga. App. 115, 116 (1) (483 SE2d 335) (1997).

### b. Pilgrim's Pride was the decedent's statutory employer

First, Pilgrim's was a principal contractor under OCGA § 34-9-8 (a). "[A] 'principal contractor' engages subcontractors to assist in the performance of the work or the completion of the project which the 'principal contractor' has undertaken to perform for another." (Citation and emphasis omitted.) *Yoho v. Ringier of America, Inc.*, 263 Ga. 338, 342 (434 SE2d 57) (1993).[1] Therefore, OCGA § 34-9-8 (a) extends "to those who contract to perform certain work, *such as the furnishing of goods and services, for another*, and then sublet in whole or part such work." (Citation omitted; emphasis supplied.) Id. at 339.

Without dispute, the evidence demonstrates that Pilgrim's contractually retained Mountain Milk to haul chickens in order to fulfill its own contracts with its customers. In other words, "[Pilgrim's] entered into its contract with [Mountain Milk]

---

[1] We note that a principal's subcontractor can also be an independent contractor. *Landrum v. Cobb County Concrete Products, Inc.*, 191 Ga. App. 805 (1) (383 SE2d 144) (1989).

7

in specific furtherance of the contract obligations it anticipated owing to its customers, and [Mountain Milk] assumed responsibilities to [Pilgrim's] specifically tied to those anticipated obligations." *Carr*, supra, 317 Ga. App. at at 739 (3) (b). See *Patterson v. Bristol Timber Co.*, 286 Ga. App. 423, 430 (3) (649 SE2d 795) (2007) (appellee was a principal contractor because it had entered into a contract to supply wood chips to a packaging company, and, in order to effectuate that contract, it executed a contract with the plaintiff's employer to load and transport the wood chips to the packaging company). The fact that Pilgrim's owned the chickens does not preclude it from being a principal contractor. See *Patterson*, supra, 286 Ga. App. at 430 (3) (rejecting the argument that the appellee could not be considered the plaintiff's statutory employer because the plaintiff was delivering the appellee's product when the injury occurred). Thus, Pilgrim's was a principal contractor for purposes of OCGA § 34-9-8 (a).

Second, the record plainly shows that the injuries to the decedent occurred on Hall's farm, on which Pilgrim's had undertaken to execute work through its subcontractor, Mountain Milk.[2] The statutory employer provision applies "in cases

_____

[2] Mullinax emphasizes that the farm did not belong to Pilgrim's and that Hall owned the farm. But the farm need not have belonged to Pilgrim's in order for Pilgrim's to be the statutory employer. The issue here is whether Pilgrim's undertook

where the injury occurred on, in, or about *the premises on which the principal contractor has undertaken to execute work* or which are otherwise under his control or management." (Emphasis supplied.) OCGA § 34-9-8 (d). Pilgrim's "Live Haul Agreement" with Mountain Milk provided that Mountain Milk would "[f]urnish all labor, tractors and supplies as necessary, to haul birds to Pilgrim's Pride's designated location." As part of this agreement, Pilgrim's expected Mountain Milk's truck drivers to be "at the farm to haul birds," and the decedent was at Hall's farm to haul birds on the date of the accident.

Similarly, for instance, in *American Mut. Liability Ins. Co. v. Fuller*, 123 Ga. App. 585, 588 (181 SE2d 876) (1971), the principal contractor had entered into a hauling contract with the plaintiff's employer to transport poultry from Georgia to New Jersey. The plaintiff was injured on a highway while attempting to shift a load

---

to execute work on the farm, not whether Pilgrim's owned it. OCGA § 34-9-8 (d). See *Williams v. Atlanta Gas Light Co.*, 168 Ga. App. 208, 209 (1) (308 SE2d 553) (1983). Also, Mullinax's reliance on *Gramling v. Sunshine Biscuits, Inc.*, 162 Ga. App. 863 (292 SE2d 539) (1982), does not aid her argument. In that case, the plaintiff was the employee of a carrier that was under contract with a shipper, and the plaintiff was injured at a customer's premises while delivering the shipper's goods. Id. We determined that, for purposes of OCGA § 34-9-8 (d), the word "premises" does not include the premises of a shipper's customer to which goods are delivered. Id. This case does not involve the premises of a shipper's customer. *Gramling* is therefore factually distinguishable from the case before us and clearly does not dictate the result here.

9

on the transport truck. Id. at 587. We explained that "[w]hen [the plaintiff] was employed, the [principal contractor] had a contract which contemplated the hauling of . . . freight on the highways. . . . [T]o the extent necessary for the performance, the highways were 'premises' on which the principal contractor has undertaken to execute work." Id. at 587-588.

*Fuller* is akin to the present case. Here, when the decedent was employed, Pilgrim's had a contract with Mountain Milk for the hauling of its birds from specific farms to a "Pilgrim's designated location," and to the extent necessary for Mountain Milk's performance of those duties, Hall's farm was premises on which Pilgrim's had undertaken to execute work. Compare *Beers Constr. Co. v. Doyle*, 230 Ga. App. 593, 594 (496 SE2d 921) (1998) (where principal contractor specifically contracted with plaintiff's employer for work to be done at a children's hospital, but the plaintiff was injured at the subcontractor's work shop, the subcontractor's work shop was not "premises" on which the principal contractor undertook to execute work) (physical precedent only). Thus, Hall's farm constituted premises on which Pilgrim's undertook to execute work.

Because Pilgrim's was a principal contractor under OCGA § 34-9-8 (a) when the decedent's injuries occurred, and because Hall's farm constituted premises on

which Pilgrim's undertook to execute work, Pilgrim's is immune from tort liability. Therefore, we affirm the trial court's grant of summary judgment to Pilgrim's.

*Case No. A19A1900*

2. In the second case, Mullinax appeals from the trial court's grant of summary judgment to Rising. Mullinax argues that the trial court erred because Rising owed the decedent a duty to act reasonably, and that there are fact issues regarding whether Rising breached that duty and proximately caused the decedent's injuries and death. We determine that the trial court erred in granting summary judgment to Rising because there are fact issues regarding whether Rising breached its duty of care to the decedent and whether such breach was at least one proximate cause of the decedent's injuries.

*a. Fact issues exist regarding breach of duty and proximate cause.*

"Where two or more independent contractors, or a general contractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor." *Doke v. Dover Elevator Co.*, 152

11

Ga. App. 434, 436 (263 SE2d 209) (1979); *Ragsdale Heating & Air Conditioning,*

*Inc. v. Terrell*, 245 Ga. App. 866, 867 (539 SE2d 199) (2000) (same).[3]

> Ordinary care is that degree of care which is exercised by ordinarily
> prudent persons under the same or similar circumstances. Exactly what
> constitutes 'ordinary care' varies with the circumstances and the
> magnitude of the danger to be guarded against. Since it is impossible to
> prescribe definite rules in advance for every combination of
> circumstances which may arise, the details of the standard must be filled
> in each particular case. But, to be negligent, the conduct must be

---

[3] In Rising's view, the *Doke* decision only creates a duty of reasonable care where the actions of the subcontractor defendant create the hazard that causes the injury, and Rising had no duty to the decedent under *Doke* because the hazardous condition that caused the decedent's death was Sewell's unauthorized use of the forklift.

But the *Doke* decision does not support this argument. In *Doke*, the plaintiff worked on a construction project site (as an employee of the general contractor), and the defendant was a subcontractor responsible for installing elevators at the site. *Doke*, supra, 152 Ga. App. at 434. The plaintiff fell into a vent hole in the top of an elevator shaft, which had been covered by a nailed sheet of plywood that became unfastened. Id. at 435. The defendant had not constructed the shaft or the vent hole; it had not nailed the plywood sheet over the hole; and there was no evidence that the defendant had unfastened the plywood or knew that it had been unfastened. Id. Nevertheless, although it probably could have been said that the plaintiff's employer had created the hazard, we made clear that the defendant "owed its fellow worker, appellant, the duty of using reasonable care to assure his safety while he worked near the elevator shaft," and it was for the jury to determine whether the defendant had been negligent in any manner. Id at 436. Thus, even though a Mountain Milk employee ran over the decedent in this case, the *Doke* decision does not preclude Rising from having a duty to the decedent — a "fellow worker" who was working near the forklift.

12

unreasonable in light of the recognizable risk of harm. Whether a party has failed to exercise ordinary care may be decided by the court only in cases in which undisputable, plain and palpable facts exist on which reasonable minds could not differ as to the conclusion to be reached.

(Citations and punctuation omitted.) *Jackson v. Post Properties, Inc.*, 236 Ga. App. 701, 702 (513 SE2d 259) (1999). Thus, although Rising had no duty to control Sewell (the Mountain Milk employee who started operating the abandoned forklift and ran over the decedent),[4] the trial court correctly concluded that Rising still had a duty to exercise ordinary care with regard to the forklift.

In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended.

(Citation omitted.) *Beasley v. A Better Gas Co.*, 269 Ga. App. 426, 428 (1) (604 SE2d 202) (2004). "Clearly there can be more than one proximate cause of an accident,"

---

[4] "Under Georgia law, as a general rule, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others." (Citation and punctuation omitted.) *SecureAlert, Inc. v. Boggs*, 345 Ga. App. 812, 816 (815 SE2d 156) (2018).

13

and "if the original negligent actor reasonably could have anticipated or foreseen the intervening act and its consequences, then the intervening act of negligence will not relieve the original actor from liability for the consequences resulting from the intervening act." (Citation omitted.) *Smith v. Commercial Transp., Inc.*, 220 Ga. App. 866, 867 (1) (470 SE2d 446) (1996). In conducting the foreseeability analysis, the operative inquiry is "whether, as a general matter, the original negligent actor should have anticipated that this general type of harm might result." (Citation omitted.) *Georgia Dept. of Transp. v. Owens*, 330 Ga. App. 123, 131 (2) (766 SE2d 569) (2014). Like the failure to exercise ordinary care, "[q]uestions of . . . proximate cause and whose negligence constituted the proximate cause of the plaintiff's injuries are, except in plain, palpable and indisputable cases, solely for the jury." (Citation omitted.) Id. at 132 (2).

Pretermitting whether there are fact questions regarding the condition of the forklift or whether the forklift was properly inspected, a jury could still find Rising liable. Specifically, the jury could conclude that Rising, through its forklift operator, failed to exercise ordinary care by leaving the forklift running and unattended, particularly in Sewell's presence, constituting at least one proximate cause of the decedent's injuries. First, Mullinax presented an affidavit of an expert in heavy

14

machinery, including forklift safety, and this expert averred that standard industry custom and practice dictate that forklift operators "stop the engine and remove the key to the forklift before exiting the vehicle and leaving the operator's position." Second, Rising was fully aware that Sewell had a history of driving the forklift without authority. Approximately a year before this incident, Rising's owner drove to a farm, saw Sewell driving one of the forklifts, and told him to "stay off that loader." She also reported Sewell to Mountain Milk. But in her deposition, she also explained that Sewell continued to use the forklifts and that his use of the forklifts "went [on] for a while." Sewell, too, testified that he had done this three or four times in the same year that the accident occurred. In fact, Rising's owner described Sewell as a "hard head" and expressed that she was not surprised that he had run over someone. She admitted, however, that she had never told Camacho to keep the ignition key on his person, and agreed that if Camacho had removed the key from the ignition, Sewell would not have been able to drive the forklift.[5]

Thus, Rising had actual knowledge that while engaged in its own work of operating forklifts during chicken catches, a particular worker *repeatedly* used a

---

[5] Camacho testified that it was Pilgrim's rule to leave the key in the forklift. A supervisor with Rising, however, testified that he was not aware of any such rule from Pilgrim's.

forklift without authority, even after being warned not to do so. The record also makes clear that the chicken catches often occur in the dark, and Rising was aware that the truck drivers are on site during the catches, in the area where the forklifts are operated. Given these circumstances, reasonable minds can differ as to whether Rising breached its duty of ordinary care by leaving the forklift running. And with regard to proximate cause, the evidence discussed above would allow a jury to find that Rising could have anticipated both that (1) Sewell would use one of the forklifts; and (2) someone driving the forklift without authority might collide with or run over another worker, especially during a chicken catch that occurs in early morning darkness. See, e.g., *Owens*, supra, 330 Ga. App. at 131-132 (2) (explaining that the issue was not whether the appellee caused the plaintiff's manner of driving but whether the appellee could have anticipated the plaintiff's driving and the ensuing collision such that the appellee's alleged negligence may constitute at least one proximate cause of the plaintiff's injuries). In viewing the evidence in the light most favorable to Mullinax as the non-movant, as we must, there are genuine issues of

material fact regarding whether Rising breached its duty of care to the decedent and was at least one proximate cause of the decedent's injuries.[6]

### b. Immunity under the Workers' Compensation Act.

Alternatively, Rising urges us to affirm the grant of summary judgment on another basis, arguing that it is entitled to immunity under the Workers' Compensation Act. Rising posits that because Mullinax alleged in her complaint that Pilgrim's, Hall, Mountain Milk, and Rising were all engaged in a "a joint venture" to grow, collect, transport, and process chickens for profit, the decedent was deemed Rising's employee at the time that he was killed. This argument is unpersuasive.

---

[6] In its brief, Rising (1) raises the issue of a plaintiff's obligation to exercise due diligence for his own safety; (2) argues that a breach of duty will not give rise to liability to a plaintiff who could have avoided injury to himself by the exercise of ordinary care; and (3) posits that the decedent could have avoided being killed by simply staying out of the loading zone. Rising did not argue these grounds in its motion for summary judgment or at the hearing on the motion. In the fact section of its motion, Rising cursorily mentioned testimony that the decedent "knew better" than to be in the loading zone and should not have been there. But we do not construe Rising's single sentence in this regard as an argument sufficient enough for us to affirm the trial court's grant of summary judgment on the basis that Rising now urges on appeal. See *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) (holding that this Court could not affirm the trial court's grant of summary judgment on the basis of causation, which was not raised in the plaintiffs' summary judgment motion).

17

It is true that "one joint venturer is immune from tort liability to its joint venturer's employees." *Seckinger & Co. v. Foreman*, 252 Ga. 540, 541 (2) (314 SE2d 891) (1984). "A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other." (Citation and punctuation omitted.) *Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170 (617 SE2d 153) (2005). For a joint venture to exist, however, "there must be not only a joint interest in the purpose of the enterprise . . . but also an equal right, express or implied, to direct and control the conduct of one another in the activity causing the injury." (Citation and punctuation omitted.) Id. "The question of whether or not the facts proved show a joint adventure between the parties . . . is generally a jury question." (Citations omitted.) *Bowman v. Fuller*, 84 Ga. App. 421, 426 (1) (66 SE2d 249) (1951).

Rising's argument fails because, despite Mullinax's allegation of a joint venture composed of all the defendants, the record still shows a fact question on this issue. See *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 502 (748 SE2d 407) (2013) (although the party that made the admission "could not establish as a matter of law that the admissions were untrue," the party "could raise an issue of fact for a jury to

determine") (punctuation omitted). First, the broiler catching and loading agreement between Pilgrim's and Rising explicitly states, "[t]his Agreement is not intended to create and shall not be construed as creating between the parties hereto a relationship of principal and agent, joint ventures [sic] . . . or any other similar relationship, the existence of which is hereby expressly denied by the parties." Compare *Foreman*, supra, 252 Ga. at 541 (1) (evidence authorized a finding that two entities were engaged in a joint venture because their contractual agreement was specifically denominated a joint venture agreement and provided that it should be construed and deemed to be a joint venture). Additionally, Rising points to no record evidence that it had a right to direct and control the conduct of the employees of the other defendants or Mountain Milk. Thus, despite Mullinax's allegation in her complaint that Pilgrim's, Rising, Hall and Mountain Milk were engaged in a joint venture, the record shows a genuine issue of material fact in this regard, and we cannot affirm the grant of summary judgment to Rising on these grounds.

Because fact issues remain regarding whether Rising breached its duty of care toward the decedent and proximately caused his injuries, and Rising is not entitled to tort immunity under the Workers' Compensation Act as a matter of law, we reverse the trial court's grant of summary judgment to Rising.

19

3. In the final case, Mullinax appeals from the trial court's grant of summary judgment to Hall, the owner of the farm. Mullinax contends that (1) the trial court erroneously granted summary judgment to Hall on grounds that were not raised in the pleadings, i.e., that the decedent had equal or superior knowledge of the lack of lighting on the farm and assumed the risk of injury; and (2) evidence showed that Hall breached his duty of ordinary care. We determine that there is a fact issue regarding whether Hall was negligent as the premises owner, and the trial court erred in granting summary judgment in Hall's favor.

*a. Fact issues exist regarding whether Hall breached a duty of care.*

"Georgia premises liability law holds owner/occupiers of land liable for damages suffered by an invitee on their property where the invitee's injuries were caused by the owner/occupier's failure to exercise ordinary care in keeping the premises and approaches safe." (Citation omitted.) *Garcia v. KRC Alderwood Trails, LLC*, 348 Ga. App. 84, 88 (819 SE2d 713) (2018). See OCGA § 51-3-1.

> While not an insurer of the invitee's safety, the owner/occupier is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge. The owner/occupier owes persons invited to enter the

20

premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap. The owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters.

(Citation omitted.) *Garcia*, supra, 348 Ga. App. at 88. "The 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and summary judgment is granted only when the evidence is plain, palpable, and undisputed." (Citation, punctuation, and emphasis omitted.) Id. at 87-88.

Putting aside the issue of whether Hall provided adequate lighting on the farm, the record still shows a fact issue as to whether Hall breached his duty of care to the decedent. Hall testified that he has long been around forklifts on chicken farms and that the "number one fear" associated with forklifts is that of striking pedestrians or objects. He further explained, "[i]t's a very dangerous operation. . . ." Hall knew, too, how quickly the forklifts entered and exited the chicken houses. He testified, though, that there is no designated forklift path on his farm, nor is there a specified pedestrian

21

versus forklift area. Mullinax's expert averred that these failures "fell below the standard of care and created an unsafe condition." As such, there is a fact issue as to whether Hall failed to exercise ordinary care to keep the premises safe.

While the trial court ruled that the decedent voluntarily assumed the risk of injury by traversing the area in which the forklift was being operated, Hall had the burden of raising this affirmative defense and proving that no fact issue remained, both of which he failed to do. *Teems v. Bates*, 300 Ga. App. 70, 72 (1) (684 SE2d 662) (2009) (noting that assumption of the risk is an affirmative defense); *Keene*, supra, 225 Ga. App. at 116 (1). Hall did not argue that the decedent assumed the risk of injury by being in the loading zone, much less satisfy his burden of proof, and so we cannot affirm on these grounds. See *Haygood v. Head*, 305 Ga. App. 375, 378 (1) (699 SE2d 588) (2010) ("A trial court is without authority to assert on a defendant's behalf affirmative defenses that can be waived. . . .") (citation omitted).[7] Thus, the

---

[7] The trial court also ruled that the decedent's knowledge of the risk of working in the dark with forklifts operating nearby was equal or superior to Hall's, and that Hall was justified in assuming that the decedent would realize the risk in traversing the unlit premises. This ruling was in response to Mullinax's argument that Hall was negligent because the chicken house premises lacked adequate exterior lighting. In her briefing, however, Mullinax clearly raised a separate and distinct source of alleged negligence on Hall's part which the trial court's order did not address, i.e., that Hall failed to provide any designated loading zone and any marked pedestrian versus forklift areas.

22

trial court erred in granting summary judgment on the basis that the decedent had assumed the risk of injury by being in the loading zone, and we cannot affirm on these grounds. *Hodge v. SADA Enterprises, Inc.*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

*b. Hall did not surrender the premises as a matter of law.*

Contrary to his argument, Hall is not absolved of liability as a matter of law on the basis that he had surrendered the premises or a portion thereof.

> If the owner surrenders a portion of the premises to an independent contractor, the owner is relieved of his duties with regard to the portion of the premises which he no longer controls. In this regard, *possession may be defined as having personal charge of or exercising the rights of management or control over the property in question*. Custody and control are the commonly accepted and generally understood incidents of possession. Taking all of these principles together, we have held that although property owners owe a duty to their own invitees, they owe no such duty to employees of or others invited upon the premises by an independent contractor hired to do work on the premises if two conditions exist: 1) the owner has relinquished possession of the premises, in whole or in part, and 2) the owner does not have the right and does not actually control or direct the work done.

(Citations and punctuation omitted; emphasis supplied.) *West v. Briggs & Stratton Corp.*, 244 Ga. App. 840, 844-845 (536 SE2d 828) (2000).

23

There is at least a fact issue regarding whether Hall had relinquished possession of the premises, either in whole or in part, so as to insulate him from premises liability.[8] "[P]ossession implies the ability to control access to the premises and to exclude others therefrom." *West*, supra, 244 Ga. App. at 846. Hall identifies no evidence showing that he surrendered the ability to exclude others from his property or the portion of the premises in which the decedent was injured. While Hall emphasizes that he does not control the catch operation or crews and he left the area after he raised the chickens' drink and feed lines, this evidence correlates with a lack of control over the *work itself*, not a relinquishment of possession of the premises. "[W]hether the owner retains control over the work of an independent contractor is a separate question from whether it relinquished possession of the premises to such contractor. Only if both conditions are satisfied is the owner relieved of any duty toward invitees." *West*, *supra*, 244 Ga. App. at 844-845. Thus, we cannot hold as a matter of law that Hall relinquished possession of the premises in whole or in part, so as to insulate him from potential liability as the owner of the premises. See

---

[8] In an affidavit, Hall stated that he "surrender[ed] possession and control of the property to the catch crew" on the incident date. This assertion, however, is merely a conclusion and is not sufficient to support a motion for summary judgment. *Cantera v. American Heritage Life Ins. Co.*, 274 Ga. App. 307, 311 (617 SE2d 259) (2005).

*Johnson v. Kimberly Clark*, 233 Ga. App. 508, 510-511 (504 SE2d 536) (1998) (because there was no evidence that the independent contractor had full and complete control of the premises where painting was being done, even on a temporary basis, a fact issue existed as to control of the premises); *Towles v. Cox*, 181 Ga. App. 194, 195-196 (1) (351 SE2d 718) (1986) (jury was authorized to resolve the question whether out-of-town defendant had delivered full and complete control of the sidewalk where plaintiff was injured by a jackhammer operated by an independent contractor).

### c. Immunity under the Workers' Compensation Act

Lastly, similar to the position taken by Rising, Hall also argues that he is entitled to immunity under the exclusivity provision of the Workers' Compensation Act because Mullinax provided a judicial admission that Pilgrim's, Rising, Hall, and Mountain Milk were all in a joint venture. Even assuming that Mullinax made such a judicial admission, this issue is not determinable as a matter of law. See *Fields*, supra, 293 Ga. at 502. Pilgrim's broiler production agreement with Hall stated, "Independent Grower will neither represent nor hold itself out to be an employee, agent, partner, representative or joint venture [sic] of or with [Pilgrim's]." Also, Hall explicitly averred that he leaves the area where the chicken catches occur and allows

25

the crew to perform their job as they see fit. Thus, the record does not demonstrate, as a matter of law, that Hall could direct and control the conduct of any employees of Pilgrim's, Rising, or Mountain Milk, so as to be considered a joint venturer with these entities.

Because there is a genuine issue of material fact as to whether Hall breached his duty of care, and Hall is not entitled to tort immunity as a matter of law, we reverse the trial court's grant of summary judgment to Hall.

To summarize, in Case No. A19A1899, we affirm the grant of summary judgment to Pilgrim's, but in Case Nos. A19A1900 and A19A1901, we reverse the grant of summary judgment to Rising and Hall, respectively.

*Judgment affirmed in Case No. A19A1899, judgment reversed in Case No. A19A1900, judgment reversed in Case No. A19A1901. Rickman and Reese, JJ., concur.*